OPINION. Murdock, Judge: The petitioner’s contention is that it qualifies for excess profits tax relief under section 722 (b) (4) by reason of the fact that it changed the character of its business immediately prior to the base period by changing its product from weaving yarns to knitting yarns. It alleges that there was not only a change in product but a change in its marketing and management. It also alleges, apparently to support its claim .under section 722 (b) (2), that the Commissioner erred in finding that “price cutting was not unusual.” However, it has offered no evidence and has made no argument on brief as to any change in management or as to any price cutting, and we will, therefore, assume that those issues, if properly raised, have been abandoned. The Commissioner does not seriously dispute that the change from weaving yarn to knitting yarn was of such nature as to constitute a change in the character of the business within the meaning of section 722 (b) (4), but contends that the change was not “immediately prior to the base period” since it was made in 1933; the change did not result in increased earnings and is, therefore, not a qualifying change under the statute; the petitioner’s base period earnings are not an inadequate standard of normal earnings; and, finally, the petitioner has failed to establish what would be a fair and just amount representing normal earnings to be used as a constructive base period earning. Regulations 112, section 35.722-3 (d), is to the effect that no temporal limitation can be placed upon the term “immediately prior to the base period” for the purpose of section 722 (b) (4). Morgan Construction Co., 23 T. C. 242. The petitioner began making the changeover to knitting yams in 1933 but it was not until 1935 that it had a sufficiently large production to complete the necessary adjustments for the change or to establish a market for its knitting yarns. Approximately 4,000 pounds of knitting yarn were produced in 1933, 111 pounds in 1934, and 90,519 pounds in 1935. The change to knitting yarns may be considered as having taken place immediately prior to the base period. Morgan Construction Co., supra. A more serious question is, what effect the change had on the petitioner’s earnings. The petitioner, in a reconstruction of base period earnings, would be entitled only to such increased earnings as might reasonably be attributed to the change. The petitioner’s situation showed improvement by the close of the base period, after at least 4 years of development under the change, but it was barely breaking even. It had losses of over $6,000 in 1935 and 1937, and income of only $91.29 in 1936, $79.68 in 1938, and $34.11 in 1939. Even if we look to later results, the petitioner’s case is no better. There was a further loss of $2,047.63 in 1940 and only $148.64 of income in 1941, the sixth year after the change to knitting yams. It was not until the war economy years of 1942, 1943, and 1944 that the petitioner had any substantial profits. The evidence is that in 1942 and 1943 most of the production of wool yam was on Government orders. The woolen industry was in a highly competitive state throughout, and some time prior to, the base period, and most woolen yarn manufacturers were operating at below capacity. The industry as a whole suffered net losses in every year from 1927 to 1935, except for 1933. The petitioner had an average yearly net loss of approximately $6,000 for the base period, yet its base period average was its best for any 4-year period since 1923. It had sustained net losses ranging from approximately $2,800 to nearly $10,000 in every year since 1927. The present record does not justify a finding that if all of the changes relied upon by the petitioner had taken place 2 years earlier than they actually did, the petitioner would have had an average base period net income sufficient to produce excess profits credits greater than those allowed it under the invested capital method. Reviewed by the Special Division. Decision will be entered for the respondent.